BARCLAY & COMPANY, INC., *v.* UNITED STATES No. 4987) [1]

United States Court of Customs and Patent Appeals, July 20, 1960

*Lawrence & Tuttle* (*Frank L. Lawrence,* of counsel) for appellant.
*George Cochran Doub,* Assistant Attorney General and *Richard E. FitzGibbon,* Chief, Customs Section, for the United States.

[Oral argument April 8, 1960, by Mr. FitzGibbon; Submitted on brief by appellant]

Before WORLEY, Chief Judge, and RICH, MARTIN, and SMITH, Associate Judges, and Judge WILLIAM H. KIRKPATRICK.[2]

WORLEY, Chief Judge, delivered the opinion of the court:

This appeal is from the judgment of the United States Customs Court, First Division, C.D. 2031, overruling the importer's protest

[1] C.A.D. 745.

[2] United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate *in place of Judge O'Connell,* pursuant to provisions of Section 294(d), Title 28, United States Code.

and holding imported tuna fish from Mexico dutiable at 45 per cent ad valorem as "Fish, prepared or preserved, in any manner, when packed in oil or oil and other substances," under paragraph 718(a) of the Tariff Act of 1930, as modified by a Presidential Proclamation of December 14, 1933, T.D. 46795.

The facts are contained in the following stipulation:

The merchandise covered by this protest was imported by plaintiff at the Port of Seattle, and entered for consumption March 23, 1951. It consists of tuna fish, prepared or preserved, packed in oil, or in oil and other substances, and assessed with duty at the rate of 45 per cent ad valorem, under Paragraph 718(a), Tariff Act of 1930, as modified by Presidential Proclamation of December 14, 1933, T.D. 46795.

Like merchandise was specified as dutiable at 22½ per cent ad valorem, under Paragraph 718(a), as modified by the Trade Agreement with the United Mexican States, which was proclaimed by the President on December 23rd and 31st, 1942, T.D. 50797, page 205, 57 Stat., 833 and 909, and was terminated by the Presidential Proclamation of September 6, 1950, T.D. 52559, 64 Stat., 427.

Under the Tariff Act of 1930 tuna fish was dutiable at 30 per cent ad valorem under paragraph 718(a). Under the flexible provisions of section 336 [3] of that Act the President, in 1933, increased the duty to 45 per cent ad valorem. The following year Congress enacted the Trade Agreements Act of 1934,[4] authorizing the President to negoti-

---

[3] Sec. 336 Equalization of Costs of Production.

\* \* \* \* \* \*

(c) *Proclamation by the President*—The President shall by proclamation approve the rate of duty and changes in classification and in basis of value specified in any report of the commission under this section, if in his judgment such rates of duty and changes are shown by such investigation of the commission to be necessary to equalize such differences.

\* \* \* \* \* \*

(f) *Modification of changes in duty*—Any increased or decreased rate of duty or change in classification or in basis of value which has taken effect as above provided may be modified or terminated in the same manner and subject to the same conditions and limitations (including time of taking effect) as is provided in this section in the case of original increases, decreases, or changes.

[4] The pertinent portion of the Trade Agreements Act of 1934 (sec. 350 of the Tariff Act of 1930, as amended) is as follows:

(a) \* \* \* the President, whenever he finds as a fact that any existing duties or other import restrictions of the United States or any foreign country are unduly burdening and restricting the foreign trade of the United States and that the purpose above declared will be promoted by the means hereinafter specified, is authorized from time to time—

 (1) To enter into foreign trade agreements with foreign governments or instrumentalities thereof; and

 (2) To proclaim such modifications of existing duties \* \* \* or such continuance, and for such minimum periods, of existing customs \* \* \* treatment of any article covered by foreign trade agreements, as are required or appropriate to carry out any foreign trade agreement that the President has entered into hereunder.

\* \* \* \* \* \*

*Provided,* That the President may suspend the application to articles the growth, produce, or manufacture of any country because of its discriminatory treatment of American commerce or because of other acts or policies which in his opinion tend to defeat the purposes set forth in this section; and the proclaimed duties and other import restrictions shall be in effect from and after such time as is specified in the proclamation.

The President may at any time terminate any such proclamation in whole or in part.

Sec. 2(a): The provisions of sections 336 and 516(b) of this title shall not apply to any article with respect to the importation of which into the United States a foreign trade agreement has been concluded pursuant to Part III of this subtitle, or to any provisions of any such agreement. \* \* \*

ate trade agreements with foreign governments, and to modify existing duties necessary to carry out trade agreements, subject to the limitation that the existing rate of duty could not be increased or decreased by more than 50 per cent. Under authority of that Act the President, in 1942, entered into a trade agreement with Mexico which resulted in a new and lower rate of duty of 22½ per cent ad valorem for tuna fish. That agreement was terminated in 1950. The instant merchandise was imported in 1951.

The issue below and here is whether the rate of duty upon termination of the Mexican Agreement reverted to the 45 per cent rate fixed by the Presidential Proclamation of 1933, as held by the Customs Court, or the earlier 30 per cent statutory rate fixed by paragraph 718(a) of the Tariff Act of 1930, as contended by the importer.

In holding that the 45 per cent rate prevailed, a majority of the Customs Court relied on the decisions of this court in *United States* v. *Metropolitan Petroleum Corp.*, *Herbert B. Moller*, 42 CCPA 38, C.A.D. 567, and *American Bitumuls & Asphalt Co. et al.* v. *United States*, 44 CCPA 199, C.A.D. 661; the third judge concurred on other grounds.

One issue in those cases involved ▉▉ an existing statutory rate of import tax which was reduced by a Presidential Proclamation on all imports below a specific quota; thereafter a second proclamation made the reduced rate applicable to all imports regardless of quota. It was held that the second proclamation did not abrogate the first but merely suspended it, and that repeal of the second operated to restore the first. If that principle is applicable here, then the judgment appealed from should be affirmed.

Appellant's basic argument is that whereas both proclamations in those cases were issued under the Trade Agreements Act of 1934, only the second proclamation in the instant case came under that Act, the first having been issued under Section 336 of the 1930 Act. Thus, it is contended, that distinction necessarily calls for a different conclusion from *Metropolitan* and *American Bitumuls*.

In our opinion the fact that changes in duty under Section 336 of the 1930 act are based on changes in the relative cost of production of articles in the United States and abroad, while changes under the Trade Agreements Act of 1934 are designed to foster foreign commerce, tends to strengthen rather than weaken the conclusion reached by the Customs Court. The modified rate of 45 per cent, which was in effect when the Mexican agreement was proclaimed, presumably represented the proper rate based on relative cost of production at that time, and there is nothing of record to indicate that any change took place in that respect during the time the agreement was in force. Accordingly, there is no logical reason for presuming an intention on

the part of the President to revert to anything other than the 45 per cent rate when the agreement was terminated.

The following provision in section 350(a) of the 1930 Tariff Act as amended is also relied on by appellant:

The provisions of sections 336 and 516(b) of this title shall not apply to any article with respect to the importation of which into the United States a foreign trade agreement *has been concluded* pursuant to Part III of this subtitle, or to any provision of any such agreement * * *. (Italics supplied.)

That language clearly contemplates an *existing* trade agreement, thus has no application here since the Mexican agreement was terminated before the instant merchandise was imported.

In support of its position that repeal of the Mexican Trade Agreement operated to restore the 1933 modification, the Government points ou that section 336 of the Tariff Act of 1930 expressly provides the procedure by which proclamations existing thereunder may be terminated. There is nothing to show that such procedure was followed, or that the President intended to rescind the 1933 modification. In our opinion that circumstance provides a further reason for regarding the Mexican agreement as merely a suspension, rather than an absolute termination of the 1933 modification under section 336.

Appellant further argues that there is a "definite repugnance" between the two proclamations in the instant case, thus they cannot exist together, and the second must be regarded as an outright repeal of the first.

It appears, however, that the two proclamations in *Metropolitan* and *American Bitumuls* were also "repugnant" in the same sense, but that was not found to require a holding that the second proclamation repealed the first, and we find no valid reason assigned for reaching a different conclusion on that point here. In that connection the Government points out that the benefits of the Mexican agreement were not available to Communist dominated countries, thus the 45 per cent rate must necessarily have remained in effect as to those countries.

An additional argument is that whereas the publications of the Tariff Commission refer to the modification of the rate from 30 per cent to 45 per cent by the 1933 proclamation as resulting in a "changed" or "modified" rate, similar publications of later dates refer to the 45 per cent rate as having been "superceded" by the 22½ per cent rate fixed pursuant to the Mexican agreement. From that it is argued that the Commission recognized a proclamation under the Trade Agreements Act as having an effect different in kind from a modification under section 336 of the Tariff Act of 1930. We are unable to agree

that the different phraseology used by the Tariff Commission necessarily supports such a conclusion. But even if it did the opinion of the Commission is not binding on either this or the Customs Court.

Full consideration has been given the extensive arguments ably presented by appellant but we are unable to agree that the Customs Court should be reversed. While it is true that Congress has given us no specific statutory guide to control such circumstances as are found here, nor does the 1950 proclamation specify the rate which should be restored, in our opinion the precedents and statutory provision referred to are sufficient to support the judgment of the Customs Court.